thank you to both council and now we will hear United States versus Chavez we'll give everyone time to get comfortable you Mr.. Moren Good morning your honors may it please the court Juan Morin along with my law partner Lana Coquiella on behalf of the appellant Douglas Chavez Take a ride with Carlos down to the jail or waive a fundamental constitutional right That was the clear and unambiguous choice presented to the appellant by the law enforcement officers who confronted him outside his home on the date in question The facts of this case are clear and unambiguous. Which allows this court to conduct a de novo review of the application of the relevant law to those undisputed facts. No less than nine times on an audio recording law enforcement officers threatened Chavez with immediate arrest unless he agreed to let them into their home to search and seize all of his electronic devices. Did they have probable cause to arrest him? We believe they did not your honor. We believe they clearly did not and ultimately we also think it's irrelevant under the spivey factors and the fact that it's a subjective analysis. Why did they not have probable cause after he admitted not only possessing the photograph but also publishing it and still having it? Well what he admitted to was possessing and publishing some of the Riley photos. There's only one photo of the entire set that the government's position was and the agent's position was was arguably suspected child pornography. All of the others were clearly by agreement not unlawful to possess. So it's one photograph at issue. It's a photograph that was not introduced into evidence. It was a which the magistrate judge pointed out on two occasions. So we're left to the description alone. The agents testified they did not have probable cause for an arrest when they arrived and months later during oral argument the assistant. They clearly admitted that at the evidentiary hearing but during the interview in the in the vehicle that was taped at some point it became clear because your client even said am I under arrest. I mean he understood at some point when he revealed information that he revealed and he thought he was going to be arrested. I believe it's clear that he feared arrest. Why exactly whether his fear was based upon that one specific photograph that wasn't discussed at all because they didn't they didn't ask about it but any specific photograph. Again the one photo that could arguably in their words. They did ask about ghost photography. Yes ma'am. And they asked about the Riley pictures and they also asked about the individual by the name of Grant. They did. Who was I guess the photographer. Yes ma'am. But again it's incredibly tenuous and the government itself during oral argument months later when asked by the court said that they could not say that there was probable cause to arrest based upon what they knew at that time even after he spoke with them. So that's why I feel confident answering the court's question they did not have probable cause but more significantly. Ultimately I believe it's irrelevant to a certain extent whether or not probable cause existed because I know the government makes a big deal in their answer brief about the threat being actionable and therefore it making it making it less serious all the coercion that took place here is somehow less serious because the threat was actionable. Except under Spivey which controls in this circuit it is a subjective test. So it matters not whether law enforcement actually had probable cause to arrest the appellant. What matters is what he believed because that is what is going to going to measure how coercive it is. And he clearly believed if there's one thing the government I think would agree to is that he clearly believed they had the power to arrest and that's all that's relevant under the law in this circuit. But that's my confusion. Of course they have the power to arrest as law enforcement but the power to arrest him it does seem that they're still hedging if you know if you're honest we know a lot of the answers to these questions anyway. I mean the magistrate even though there was some concern about the coerciveness of the entire exchange ultimately found that he was given a choice from the very beginning to the very end in terms of cooperation. So what in particular are you identifying as the more coercive nature in terms of the balancing? Well there are several things that are coercive. Of course the most basic and obvious are the threats of arrest. He was threatened in no uncertain terms and provided with an option. Either you waive your rights and agree to this consent or you're going to jail. One of the officers chuckled about it on the tape and the magistrate made note of that as well in his order. Defendants waive their rights all the time to avoid other consequences right? I mean a plea bargain is a pretty easy example. You waive your constitutional right to a trial and all the protections inherent in that in order to get a lower sentence. So it's not it's not just that anytime you waive your rights to avoid a legal consequence that's unlawful coercion. Of course not but but this but this was blatant coercion. This is not this is either you do this or you're going to jail. Your theory is that anytime an individual who is susceptible to being arrested that if you if the police says either you cooperate or we're going to arrest you here that that in and of itself is coercion. I'm saying that multiple repeated repeated threats to arrest someone unless they sign a consent to search form to let law enforcement into their home combined with all of the other factors set forth in Spivey which we briefed in our in our in our brief as well. The totality of the circumstances which is the relevant analysis when you look at all those yes in this case the coercion overpowered everything else but there are other factors as well. You have a situation where he was told Mr. Chavez was told when he was at work obviously by either his mother or his stepfather. It's unclear that the agents had been looking for him and when he was at work he chose to go home and he told him I know you were looking for me. He got in the vehicle with them to talk to them and he chose to stay in there even when he learned that they wanted to talk about child pornography that they were there to talk about child pornography. Well your honor I think at some point as as magistrate tours noted in his findings it was no longer a choice because I agree with with magistrate tours when he wrote when presented with the option of arrest or consent. No reasonable person could feel free to exit the vehicle unless he gave the agents exactly what they wanted. So while it could be at the outset I would agree that the encounter between Chavez and law enforcement could be characterized as consensual that changed at some point as magistrate tours noted in his findings. Isn't that why it matters whether they really had probable cause to arrest because if they did then they're giving him a real choice because they could arrest him and frankly probably could have gotten a warrant to carry out this search. And they're giving him a choice and frankly he perhaps got the benefit of the bargain he wasn't arrested that day. It was some time before he was arrested. So why why in that sense why would you remove that option from a particular person. Well first I would question whether he got the benefit of the bargain because I think if he had simply refused to consent they would not have been able to get a warrant and they would never have charged him with a crime. Well I think I think that's why I think that's why something matters besides did they make this did they make this kind of offer or not right. It depends on whether they had the ability to actually carry out the other end of the bargain. Well again not in my view respectfully I don't believe that's the case under Spivey your honor because Spivey makes it a subjective analysis regarding whether the consent is voluntary. That being the case all that matters is what what Chavez believed. Did the belief that he could be arrested if he didn't give law enforcement what they wanted affect his decision to consent. Not whether they actually had the lawful authority to do so. All that matters is that he thought they did because that that's what that's what forced him ultimately to waive his rights. I'm just not sure how I'm not sure how that can be true when defendants as I said often give up rights in a calculated analysis right. Not under not under circumstances such as this where they're where they are being coerced. It's one thing to stand up in front of a judge with the advice of counsel waive your right to a trial and agree to and agree to plead guilty in exchange for some sort of and perhaps not always are you getting something in exchange sometimes an open plea but that's one thing. It's quite another to be outside your door be ushered into a vehicle by police officers and told these are your options. You can take a ride down to the jail or you can let us into your house and consent to a search of these things. I think those are those two things are very different your honor with respect. But you're not making a Miranda argument right you're not right. It's not a matter of no we're not we did not raise Miranda below and we're not contesting the validity of it or the admissibility of his statements. It's simply the coerced consent which is the central issue of our argument. Right but I guess the one of the issues I have is that your client I understand your argument about the perceived force coercion. But there are many steps where there was consent given. So not just walking up to the door putting the key in the door opening the door. Okay then going into his room and having them go into the electronics and then giving them the password for the electronics. I mean there's a lot of different steps. Yes your honor. There's there's a lot I mean there's just a lot of steps of consent that are given here. A few things. First off at all points during during that time that the court just pointed to he was under the same threat. Either do this or you're going to jail. He understood that if at any point in time he changed his mind he was going to jail. So that same threat was still in his mind at every stage. He also asked to speak to his lawyer and that never happened. No he asked for the number and I wanted to ask you a question about that. And why if at all we should interpret the request to gain his lawyer's number as a request for an attorney. Well I would agree again with the magistrate presided over the hearing and in response to statements by the government about well he just asked for the number. Logically why else would he be asking for the number? Did he just want to memorize it? Obviously it's a reference to wanting to contact his lawyer. I mean maybe I'm wrong but I thought I was under the impression that he thought his phone was going to get taken. His phone was inside the home at that time and he was asking to be able to get his lawyer's number out of it. And I can think of no other logical reason but to contact that lawyer. He was also separated from his family. He was also threatened with humiliation that the police would visit upon him if he did not cooperate. There are all sorts of factors other than the coercion but the coercion is above all else the most significant and frankly the worst I've seen in 30 years that I can document. And for that reason I believe that the court should reverse the ruling denying the motion of suppress. Thank you. You've reserved your time for rebuttal. Mr. Nguyen. Connor Nguyen. Good morning, Your Honors, and may it please the court. Connor Nguyen for the United States. Mr. Nguyen, can you address sort of the elephant in the room which is, is this coercive or not by the government? Did they, I guess let's start with the first one. Did they have probable cause at some point in time during the interview to arrest Mr. Chang? Yes, certainly. Certainly they did, Judge Legor, particularly by the point in time at which the threat of arrest that the magistrate judge found occurred here, which happened at minute 37 of the interview between Mr. Chavez and the FBI agents. Now, walking into the interview, the agents did not perceive themselves to have probable cause to arrest Mr. Chavez, although candidly I'm not sure that that's correct as an objective matter, but that was the agent's understanding. Then throughout the course of the next 37 minutes as they spoke with Mr. Chavez, they confirmed that he in fact ran the ghost photography Amazon account that had been selling the images of RC, including the one image that the officers viewed as suspected child pornography. Is there a requirement that there has to be more than one image or one possession of one image in order for it to be child pornography? No, not at all. The possession of even one image of child pornography is illegal under federal law and would give the government a basis to prosecute Mr. Chavez. Why do you think they thought that it was more important to know that he ran the ghost account than that he possessed that photograph? Candidly, Your Honor, I do think that the agents in this case were looking into a broader set of circumstances concerning the distribution of the RC images. Mr. Chavez was a lead point, a person they know who had been selling the images through the Amazon account. But it's clear from the interview that somebody else was in fact producing the exploitative images of this teenager. And I think that was the agent's primary concern when they walked into this interview with Mr. Chavez. He was, in a sense, a step on in the larger course of the investigation. I see. Thank you. Is it coercive in any way that, I mean, we know what was found when they went into the home. But during the car interview, the officers themselves are describing the contents as erotica as opposed to pornography. Is that in any way coercive? Because now he's being told what you're telling me or describing doesn't sound like anything illegal. So keep telling me more. To be clear, within the context of the interview with Mr. Chavez, the agents never described the images of RC as erotica. What they say instead is that the sort of images that Mr. Chavez has been describing as on his devices were as erotica. That's two different things. The agents did not say that the specific... Oh, I'm not saying that they did in terms of RC. I'm saying exactly the second point, which has led to more conversation and perhaps him feeling more comfortable, which is what the magistrate judge described, that the conversation, the tone was very relaxed, which in some ways perhaps made it a more coercive environment. So two things. Number one, to be clear, specifically there was no false representation about the key RC image being child erotica. I understand. Okay. Then as to kind of the friendly demeanor of the officers, I think I would push back a bit on the idea that that makes this a more coercive encounter. I think one would expect a far more coercive encounter to be a situation where the officers are kind of berating Mr. Chavez or really threatening him in like a hostile and aggressive tone. But the magistrate judge specifically found here that it's a friendly and relaxed tone. And I think a little bit more to kind of the overall tenor of the interview between Mr. Chavez and the FBI agents, Judge Abudu, I think it's important to recognize that Mr. Chavez here was engaged in a bit of a cat and mouse game with the agents. Specifically, he would repeatedly lie to them about his behavior and then when pushed further would come clean. He did that over and over throughout the course of the interview leading up to minute 37. In addition, he denied owning the laptop on which the child pornography in this case was eventually found. When the agents asked for his consent to search three devices, he said yes, but notably when they had not asked about the laptop at the outset. Later on, when he's directing them to his devices, he knows that the agents have asked him about his iPhone 12 and conveniently the agents are directed only to an iPhone 7 that he hasn't used for months. Throughout the course of his entire encounter with the agents, he's lying and deceiving. Those are not the actions of someone whose free will has been overborne by coercive tactics. To the contrary, it's someone making a calculated and honestly conniving strategy as to how to escape this with the least criminal exposure possible. Can you describe what, if anything, is the substantive difference between child erotica and child pornography? Yes. So I think this comes down from the Supreme Court's First Amendment decisions, particularly in the context of Ashcroft and the like. Child pornography, as understood under federal law and defined in 18 U.S.C. 2256, requires a level of extremely explicit sexual conduct, right? It can't be kind of foreplay as it were, right? Like a teenager dressed in a bikini does not count as child pornography under federal law. There needs to be kind of sexual intercourse being depicted or something approaching it. Or genitalia. Excuse me? Or genitalia. Sorry? Genitalia. Yeah, genitalia, the pubic area is something of that nature. I think there's an opinion, Belenov, from our court that discusses sort of the difference. Right. And the difference is just that child erotica doesn't quite reach to the line of sexual explicitness that loses First Amendment protection. And the federal definition under 2256 kind of accounts for that First Amendment reality. I also want to point out there was some discussion in terms about child sexual abuse material versus child pornography. And in case it's helpful, the two terms are largely overlapping. Child pornography is, as I've just described, hardcore explicit depictions of children and sexual activity. Child sexual abuse material is a victim-oriented term. Generally means the exact same thing. Maybe with one potential exception, it can sometimes cover material of children that would be obscene and therefore can be punished under the First Amendment under the obscenity section under a statute like 1466A, even if that might not necessarily be child pornography. There can be some difference there. And so child sexual abuse material might refer to other illegal content. But the two terms are, in the vast majority of cases, overlapping. So in your view, would child erotica not present probable cause for arrest? And if so, what do you make of the particular photograph that the agents knew that he had? I mean, I think if someone possesses mere child erotica, it does not give probable cause to arrest for a child pornography crime. It's distasteful as those photos might be in the possession of an adult. They do not rise to the level of a federal crime. As to the specific RC image here, it crosses the line. It goes past child erotica into child pornography or child sexual abuse material. That's specifically because the G-string that the child is depicted as wearing barely covers her genitalia. I think that makes it quite clear that the pubic area is exposed. Not only that, she's in an extremely sexualized and provocative position. And there's a close-up focus on where her genitalia would be. I think given those facts, this particular photo has crossed the line into child pornography that is illegal under federal law. Thank you. Can we go back to the coercive nature? So I think you made reference to minute 37. And even the magistrate judge also identifies that at the point in terms of probable cause, but also where a reasonable person in Mr. Chavez's position would not have felt free to leave. So now we have even the magistrate judge recognizing there is some coercion happening right now. Can you break that down? Yes, I'm happy to. I mean, I think everybody is on the same page here. The magistrate judge, the district court, the government, and Mr. Chavez, that minute 37 is what one would describe as the most coercive part of this interview to the extent that it is coercive. So I think at that point there is a threat of arrest. We haven't disputed that. Mr. Chavez no longer feels free to leave according to the magistrate judge. We haven't disputed that either. That being said, Mr. Chavez remains an intelligent and well-educated individual. Not only that, he's someone who has been reading in his spare time up on FBI child pornography investigations. He's aware of the context in which he's found himself. And so then he asked for his lawyer's number, and why shouldn't that get closer to the line of invoking your right to counsel as opposed to a mere inquiry, especially given the circumstances? Okay, so a few points. Number one, as Mr. Chavez just affirmed here, he has made no Miranda argument in this case, nor any sort of challenge to the voluntariness of any statement during that interview. Second, even if he had, a request for his lawyer's phone number doesn't constitute an invocation of his Miranda right to counsel. Such requests need to be unambiguous. I think it's quite clear just asking for your lawyer's phone number doesn't make clear that you want to speak to the lawyer right now, particularly when the agents have been clear leading up to that point that they intend to seize his iPhone, presumably where he had stored his lawyer's phone number. I also think to the voluntariness point of the consent search Jejebudu, I think it's relevant that Mr. Chavez already has a lawyer. This is, I don't know why he has a lawyer, candidly, but this is not someone who is uninformed of his legal rights. In fact, for a lay person, he seems to have like great familiarity. Well, you still get a right to have an attorney, even lawyers get a lawyer on defense. He does, but the vast majority of people in a situation like this do not have a lawyer on retainer. I think that is an unusual situation. Specifically, I think one other thing, there was some discussion going on between Mr. Chavez and this court about how to think about the fact that if a threat to arrest is justified, if a defendant is put to a hard choice when it comes to his consent to search, how to kind of conceptualize that alongside this court's decision in Spivey. I don't think it's that difficult, actually. I think Spivey, this court's decision in Thompson, which we cite, and this court's decision in Urey together kind of piece this together. Now, I don't want to say any one of those cases is precisely on point, but I think the building block, the logical building blocks this court needs is present across those three decisions. And let me explain why that is. The Spivey tells us that we have to examine the circumstances from the perspective of the relevant individual. So here are Mr. Chavez. And when someone like Mr. Chavez is presented with a choice between a threat of arrest, which he believes to be justified, indeed, Mr. Chavez is the first one here, right, who raises this prospect that he's going to be arrested. I think he's aware that that is on the table. So when someone's faced with that sort of threat or the alternative of granting consent to search, they're forced to a hard choice, but not a coercive one. And that's what we get from Urey. Urey shows that when there's a choice between lawful detention and granting permission to, for example, warrantless searches and in-home arrest, that's not coercive. Now, what Spivey shows us is that the problem is when the police put someone to a choice based on a claim of authority that they lack. And in this case, right, well, not in this case, but in theory, if there were a false threat of arrest, were there a situation where officers claimed that they were going to arrest someone if they didn't grant consent to search and had no lawful authority to, in fact, arrest that individual? That's where these three cases seem to show a problem. And Thompson, the other case I cited, just reinforces that point. Admittedly, it comes from the context, from the confession context, where a defendant was told that if he didn't reveal to the officers what he knew, there was a chance that they might prosecute his co-defendant. But this court specifically said as long as there's probable cause to prosecute that co-defendant, that's a difficult choice, but not an illegal one. And the confession context is analogous to the consent to search analogous. Both of those legal tests hinge on the voluntariness of a defendant's course of action and are reviewed for totality of the circumstances. And Spivey specifically relies on the confession context in analyzing consent to search. What would your answer be if the officers here had said, unless you consent to this search, we're going to arrest your mom? I think that would depend on whether the officers have probable cause to arrest the mother. So let's start with if they didn't. You agree, I assume then, that that would be coercive? Certainly, that would count as a coercive statement. Whether it would render Mr. Chavez's consent involuntary, that's a different question. That requires consideration of that alongside all the other evidence. But were it a baseless threat of that kind, certainly that tilts towards coercive. What if they did have authority to arrest his mom? What if they somehow knew that she was involved in this offense too, but they really wanted to hold that over his head to get more evidence? I think this court's decision in Thompson, where it's a threat of prosecution against a co-defendant that is based on probable cause, kind of leads to the conclusion that they're allowed to do that. Again, that's a difficult choice for a defendant, but it's officers who have lawful authority to do something. And in a sense, it's a negotiation. It's a hard choice with the defendant about what rights he wants to waive in order to avoid certain lawful results. And the Fourth Amendment tolerates that. You talked about it a little bit, but can you spend more time discussing the argument that it was his belief that they had the authority to arrest him rather than their actual authority to do so that makes a difference in the subjective analysis? So thinking about how he would have been in his position, he is presented with a statement that you are going to go to jail or give us consent to search. And that kind of tees up a choice for him. But if it's a false choice in the sense of the officers cannot actually act upon the threat of arrest, then he's not appraised of the circumstances as they in fact exist. And that sort of deceit and trickery, Spivey even kind of recognizes that's the sort of thing that can start to vitiate a defendant's consent. And I think that's how you marry the two, how you marry the question of whether the officers objectively have probable cause with the kind of subjective focus of the voluntariness inquiry. I think that's how they come together. If the court has no further questions, then the government would rest on its briefs. Thank you, Mr. Nguyen. And Mr. Morin, you've reserved three minutes. Thank you. To begin, the district court made factual findings about the fact that the tenor of the encounter was not relaxed or friendly. And those are undisputed factual findings. That's one of the first things that was talked about at the outset of the government's presentation. Back to the issue of whether they had probable cause, the Edwards case that we cite in our supplemental memorandum is on all fours with this case. In fact, the description of the single photograph in that case is so similar to the photograph in this case that I almost think it might be the same one. And in Edwards, where the facts are more egregious because in addition to that photo, they had evidence of the defendant sending hundreds of photographs of child erotica and making specific sexual comments about a specific ten-year-old girl, the court reversed the finding of the denial of the motion to suppress in that case, ultimately finding that there was no PC for the issuance of the search warrant on facts that are more egregious than ours and almost identical on the issue of that one photograph. The government brought up the issue of the iPhone 7... Tell me in your view why this photograph was child erotica rather than child pornography. For all the reasons explained in the Edwards case, Your Honor, that the photograph... First of all, what photo is part of the problem? As the magistrate notes in his findings, on more than one occasion he makes reference to the fact that the government chose to not introduce the photo. So we're left to make a judgment based upon a description given... It was described, right? And as we're all well aware, we tried not to disseminate, further disseminate these images because they do impact the victim of that photograph, correct? I mean, there is a reason for the reason that we try not to disseminate, i.e., the government tries not to further disseminate. I understand, and of course that has to be balanced with all the other interests we have here, and ultimately it's the government's burden, and they chose, and I understand the reasoning behind it, to not introduce the photo, but it leaves us guessing somewhat as to exactly how the photo looks, and if the photo covers at all the genital area, I think the magistrate had a line about not all G-strings being created equally. He actually wrote in his... Haven't we lost the plot when that's the conversation we're having about a photograph of a child in a sexual position? I completely understand the human natural initial reaction to any of this stuff. It's obviously horrible, but not relevant to the legal analysis ultimately about whether it was pornography and whether it qualified as sufficient to give them probable cause for a search, and I think Edwards will clearly show that it didn't. And one last thing I want to say, the government talked about this URI case as standing for a proposition that it most certainly does not. In URI, the defendant had entered into essentially a plea agreement where he pled guilty, was placed on probation essentially, and one of the conditions of probation was you waive your right to contest future searches. That's very different than what we have in this case. And without our rest, thank you. Thank you. I appreciate both of your arguments, and we'll move on to our next case.